IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

UNITED STATES OF AMERICA   )
                           )       CRIMINAL ACTION NO.
     v.                    )         2:23cr298-MHT
                           )            (WO)
CHRISTOPHER CODY BOLTON    )

OPINION AND ORDER

This case is before the court on defendant Christopher Cody Bolton's motion for early termination of supervised release. Both of his probation officers[1] support his motion, but the government does not. For the reasons below, the court finds that the motion should not be granted at this time but should be reconsidered after an additional six months or so.

---

1. Bolton's supervised release began in the Middle District of Alabama, but after completing the court-ordered LifeSource program and permanently relocating to the Northern District of Alabama, this court allowed Bolton to be supervised by a probation officer in the Northern District.

## I. Legal Standard

As this court recently emphasized in *United States v. Steele*, 2026 WL 2211555 (M.D. Ala. 2026) (Thompson, J.), a court "may, after considering the factors set forth in [18 U.S.C.] section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)--[] terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release ... if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."[2]  18 U.S.C. § 3583(e), (e)(1) (paragraph break

---

2.    The 18 U.S.C. § 3553 factors to be considered are:

(1) § (a)(1): "the nature and circumstances of the offense and the history and characteristics of the defendant";

(2) § (a)(2)(B): deterrence;

(3) § (a)(2)(C): incapacitation;

(4) § (a)(2)(D): rehabilitation;

omitted).   In ruling on a motion for early termination of supervised release, "a court must demonstrate that it has considered the [relevant] § 3553(a) factors." *United States v. Johnson*, 877 F.3d 993, 997 (11th Cir. 2017).   The U.S. Sentencing Commission also provides a non-exhaustive list of factors courts "may wish to consider" when deciding whether to terminate a defendant's remaining term of supervised release.   *See* U.S.S.G § 5D1.4 cmt. n.1(B).[3]

---

(5) § (a)(4):  "the kinds of sentence and the sentencing range established" by the U.S. Sentencing Commission;

(6) § (a)(5):  relevant U.S. Sentencing Commission policy statements;

(7) § (a)(6):  "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and

(8) § (a)(7):  "the need to provide restitution to any victims of the offense."

3.  These factors are:

3

## II. Background

"(i) any history of court-reported violations over the term of supervision;

"(ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);

"(iii) the defendant's substantial compliance with all conditions of supervision;

"(iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;

"(v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and

"(vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant."

U.S.S.G § 5D1.4 cmt. n.1(B).

4

In February 2022, Bolton committed the criminal offense of possessing a firearm after being convicted of a felony.  Two years later, he pleaded guilty to that crime and was sentenced to time served (one day) followed by a three-year term of supervised release. He was first transferred back to state custody to serve the time left on his related state case.  He was released from state custody in March 2025, and he immediately began his supervised release at the year-long residential substance-abuse treatment program at LifeSource, as ordered by the court.  He completed that program a few weeks early and began living on his own about five months ago, in February 2026.  So far, he has completed about 16 months of his 36-month term of supervised release, with about a third of those months in the "real world," that is, out of a structured environment.

Since release from state custody, Bolton has maintained steady employment, first as a handyman at

5

the treatment facility, and now working for two organizations--one where he builds residential storm shelters and another where he builds custom homes from shipping containers.  He has worked toward financial security--including obtaining full benefits through his employment--allowing him to reinstate his driver's license, purchase a car, secure stable housing, and contribute to a 401(k)-retirement plan.  Further, he is the primary caregiver for his 17-year-old son and cares for his mother, who is battling cancer.

In July 2026, Bolton filed, pro se, the pending motion for early termination of his three-year term of supervised release.  The court held an in-person hearing on July 30, 2026, to discuss the pending motion.

### III. Discussion

As noted earlier, both of Bolton's probation officers support his motion for early termination of

6

supervision.      One   of   his   supervising   probation officers   stated:   "Based   on   Bolton's   supervision compliance,   the   probation   officer   respectfully recommends   that   the   remaining   term   of   supervised release   be   terminated."   Probation   Resp.   to   Mot. (Doc. 69)   at   1.   The   government   opposes   early termination   because   "[Bolton]   was   sentenced   to   three years   of   supervised   release   and   he   has   not   yet   served even   half   of   that   amount.   While   his   conduct   under supervised release to this point has been laudable, the government   believes   more   time   on   supervision   is appropriate."  Gov't Resp. to Mot. (Doc. 70) at 1.

At base, the question facing the court is whether Bolton needs more rehabilitation and assistance.  For the reasons stated at the hearing and detailed below, the court finds that he is still in need of the support that   supervised   release   offers   and   that   early termination   of   his   supervised   release   is,   therefore, not appropriate at this time.

7

Supervised release "'fulfills rehabilitative ends' and 'provides individuals with postconfinement assistance.'" *Esteras v. United States*, 606 U.S. 185, 196 (2025) (quoting *United States v. Johnson*, 529 U.S. 53, 59–60 (2000)). In its recent amendment to the Sentencing Guidelines affecting supervised release, the United States Sentencing Commission noted: "[T]erms and conditions of supervised release are imposed at original sentencing, often years before the defendant begins supervision. People and their circumstances may change in and after prison, such that the original term and conditions may no longer be appropriate after the defendant's release. Courts are encouraged to consider modifying the terms and conditions of supervised release whenever changed individual circumstances so warrant." U.S.S.G app. C, Am. 835 at 334 (2025). The court heeds the Commission's recommendation and has decided that Bolton should remain on supervised release

8

at this time, despite his demonstrated progress in important areas.

At sentencing in 2024, the court varied downward from a Guidelines range of 30 to 37 months in part because of Bolton's significant adverse-childhood experiences which affected his behavior, his mental-health diagnoses, and his diagnosed substance-abuse disorders.  These factors undergirded the court's decision to send him to a residential substance-abuse treatment facility for one year instead of incarcerating him.

According to his probation officer, Bolton's time at the treatment program was spotless, and he even completed the program a few weeks early.  In the five months since leaving LifeSource, he has continued to comply with all conditions of his supervised release.

Bolton has laid a strong foundation of financial stability for his continued reentry into society.  *See* U.S.S.G. § 3553(a)(2)(D).  The court commends him for

his efforts in getting to this point.  As he detailed to the court at the hearing, and as exhibited by his current circumstances, Bolton did more than simply complete the program: he showed foresight by making a plan to ensure his personal success *after* the program was over, when he would be 'on his own' in a less-structured environment.  Within five months of finishing the LifeSource program, he had obtained a residence, reinstated his driver's license, paid off outstanding court-related costs, purchased a car, and obtained and maintained full-time employment.  These achievements take work and planning.  Bolton has shown diligence and drive in getting back on his feet from a financial perspective--traits which should continue to serve him well on his rehabilitative journey.

However, as noted earlier, Bolton spent about eleven months in a residential treatment facility and has been 'on his own' for only about five months.  And, as the court stressed at the hearing, addiction is a

lifelong battle and often rears its head during difficult times.[4]  Because recovery from addiction is rarely a smooth journey and often includes relapses, the court believes that Bolton requires more time under supervision outside of the treatment program. LifeSource provided many more resources and supports than Bolton has now, so the court would like to see him continue his clean track record while living without the program's guardrails.  Absent LifeSource's guidance and resources, it is critical that he have the assistance of his probation officer over the next six months or so should he run into any obstacles on his recovery journey.  The court also notes that his state parole ended in June 2026, so federal supervision is the only court-mandated support in place at this time.

---

4. Due to the nature of addiction, the court strongly recommends that Bolton rejoin a substance-abuse support group and stay involved in it after his supervised release ends.

11

Bolton's supervision consists of random drug testing and home visits by the probation officer. Continuing these aspects of supervision will provide Bolton with assistance in maintaining sobriety and resources should he need them without overburdening or derailing his positive rehabilitative trajectory.

At bottom, while Bolton has followed through with the requirements of his sentence so far and has shown that he can be a productive member of society, the court believes that he needs about a year living away from the structured environment of the residential-recovery program to ensure that his recovery is strong before terminating supervised release. Thus, continuing supervision is not "'greater than necessary' to fulfill the purposes of imposing supervision." U.S.S.G. app. C, Am. 835 at 335 (2025) (quoting 18 U.S.C. § 3553(a)). In accordance with the Commission's guidance that "[c]onsidering early termination at appropriate intervals will help ensure

12

that resources are allocated to the individuals most in need of continued supervision," *id.*, the court will reconsider Bolton's termination motion in February 2027, once a year has passed since he graduated from the treatment program.

Before concluding, the court wishes to reiterate to counsel for both parties a clarification it made at the hearing.  The court would like to see the parties--in either their motion for early termination or response to the motion, and in any oral arguments--*connect elements of the defendant's case and circumstances to the relevant 18 U.S.C. § 3553(a) factors, as well as discussing the factors identified by the Sentencing Commission (all of which factors the court laid out at the beginning of this opinion), in explaining whether termination is warranted or whether additional supervision is needed.*  For example, the absolute time a defendant has spent on supervised release or the percentage a defendant has served of the

13

supervised-release term imposed at sentencing is not a determinative factor, by itself, in the court's analysis.  Once a defendant has completed the minimum one year on supervision, the termination analysis focuses on the relevant § 3553(a) factors, as well as the factors identified by the Sentencing Commission, to determine whether the defendant has been rehabilitated to the extent that supervision is no longer needed.

In conclusion, the court believes that, in light of all the circumstances presented, continued supervision is necessary to reinforce Bolton's gains and provide an additional measure of accountability.

*** 

Accordingly, it is ORDERED that defendant Christopher Cody Bolton's motion for early termination of supervised release (Doc. 65) is left pending for reconsideration until February 17, 2027.  On that date, the supervising probation officer or officers shall file a report informing the court whether defendant

**14**

Bolton has remained compliant and whether probation still recommends early termination of supervision. If probation no longer recommends early termination or if the court has concerns that early termination is appropriate, the court will solicit responses from defense and government counsel. If defense counsel or government counsel should prefer that the court, instead, deny the motion would leave to renew, counsel should so inform the court by August 12, 2026.

DONE, this the 6th day of August, 2026.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

15